IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

JANOS SANDOR, *administrator of the estate of Xavier Mitchell-Sandor*,

    Plaintiff,

    v.

THE UNITED STATES OF AMERICA, *et al.*,

    Defendants.

Case No. 4:24-cv-98

## AMENDED OPINION & ORDER

In this wrongful death case, Janos Sandor, administrator of his son Xavier Mitchell-Sandor's estate, seeks to recover damages from the United States and from defense contractor Huntington Ingalls, after Mr. Mitchell-Sandor died by suicide while working aboard the aircraft carrier U.S.S. George Washington. The defendants moved to dismiss the claims against them. For the reasons stated herein, the defendants' motions will be **GRANTED**.[1]

**I.   BACKGROUND**

Xavier Mitchell-Sandor enlisted in the U.S. Navy on August 24, 2021. ECF No. 1 ¶ 17. In January of 2022, after completing the requisite training, Mr. Mitchell-Sandor was stationed aboard the U.S.S. George Washington ("the GW").

---

[1] The Court has considered this matter's procedural history and the content of the record and concluded a hearing is not necessary. *See* Fed. R. Civ. P. 78(b); E.D. Va. Civ. R. 7(J).

*Id.* ¶ 18. The GW, an aircraft carrier, was dry-docked in Newport News, Virginia, to be refueled and to undergo a complex overhaul ("RCOH"). *Id.* ¶ 15. The government contracted Huntington Ingalls Industries, Inc. and Huntington Ingalls Incorporated (together, "HII") to complete the RCOH within a 48-month period, concluding in August of 2021. *Id.* ¶ 13. The terms of the contract required HII to provide living accommodations and all related services for workers on and around the carrier. *Id.* ¶ 16. The RCOH, which should have been completed five months prior to Mr. Mitchell-Sandor's assignment to the GW, took twenty-one months longer than planned. *Id.* ¶¶ 22–23.

Mr. Mitchell-Sandor was assigned to provide security for the GW and was required to stand watch on the carrier overnight, from 5:00 p.m. to 5:00 a.m. ECF No. 1 ¶ 18. The GW's commanding officer ordered a "complete crew move-aboard" that required Mr. Mitchell-Sandor and the rest of the crew to live aboard the GW. *Id.* ¶ 20. While living aboard the GW, Mr. Mitchell-Sandor experienced many difficulties: He struggled to sleep due to the loud noise from the construction, had to frequently sleep in his car, had to walk a mile from the GW to access his car, had to walk long distances to obtain food and other living essentials, and routinely lost access to electricity, heating, ventilation, air conditioning, and hot water. *Id.* ¶¶ 27, 28, 29, 31. Additionally, Mr. Mitchell-Sandor did not have access to television or internet aboard the carrier, was not given a sufficient stipend to secure off-ship housing, and was unable to receive medical care due to a one to two-month waiting period for an initial assessment. *Id.* ¶¶ 34, 35, 38. Mr. Mitchell-Sandor felt unable to report complaints

regarding the living conditions aboard the carrier out of fear of bullying or hazing, and he felt he could not seek mental health treatment for fear of limitations in future career opportunities within the Navy. *Id.* ¶¶ 36, 39.

On April 15, 2022, Mr. Mitchell-Sandor died by suicide aboard the GW, using a Navy-issued pistol. ECF No. 1 ¶ 41. His father, the plaintiff, filed a Complaint alleging three causes of action against the government: Negligence (Count I), and Wrongful Death under both the Federal Tort Claims Act (Count II) and the Suits in Admiralty Act (Count III). *Id.* ¶¶ 45–63. The Complaint also alleges one Wrongful Death cause of action (Count IV) against HII. *Id.* ¶¶ 64–72. The government filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.[2] ECF No. 57. Defendants HII filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. ECF No. 59.

## II. LEGAL STANDARDS

### A. Motions to Dismiss for Lack of Subject Matter Jurisdiction Under Fed. R. Civ. P. 12(b)(1)

"A defendant may challenge subject matter in jurisdiction in one of two ways." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted).

> First, the defendant may contend "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." When a defendant makes a facial challenge to subject matter jurisdiction, "the plaintiff, in effect, is afforded the same procedural protection as he would

---

[2] The plaintiff does not contest the government's Motion to Dismiss as to Count I of the Complaint. ECF No. 67 at 1. Therefore, Count I will be **DISMISSED**.

>receive under a Rule 12(b)(6) consideration." In that situation, the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.
>
>In the alternative, the defendant can contend . . . "that the jurisdictional allegations of the complaint [are] not true." The plaintiff in this latter situation is afforded less procedural protection: If the defendant challenges the factual predicate of subject matter jurisdiction, "[a] trial court may then go beyond the allegations of the complaint *and in an evidentiary hearing* determine if there are facts to support the jurisdictional allegations," without converting the motion to a summary judgment proceeding. In that situation, the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction.

*Id.* (citations omitted).

### B. Motion to Dismiss for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)

"To survive a [Fed. R. Civ. P. 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a plaintiff must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 545. When considering a motion to dismiss, the court "must take all the factual allegations in the complaint as true," but the court is "not bound to accept as true a

4

legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## III. ANALYSIS

### A. The Government's Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1)

The government brings a facial challenge against the Complaint under Fed. R. Civ. P. 12(b)(1). ECF No. 58 at 9–10. A facial challenge to jurisdiction does not challenge the truth of the facts the plaintiff alleges. *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982). Rather, it asserts that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Id.*

The plaintiff requests that the Court construe the government's motion to dismiss as "a factual, not facial attack." ECF No. 67 at 11. The Court declines to do so. In their request, the plaintiff relies on *Kerns*, which states that "when the jurisdictional facts and the facts central to a tort claim are inextricably intertwined, the trial court should ordinarily assume jurisdiction and proceed to the intertwined merits issues." *Kerns*, 585 F.3d at 193. However, in *Kerns*, the Fourth Circuit only "assess[ed] whether the jurisdictional facts [were] so intertwined with the merits" because the government asserted that the complaint "included jurisdictional allegations that are not true." *Id.* Here, the government does not challenge the truthfulness of the Complaint's jurisdictional allegations. *Cf. id.* Rather, the motion contends that the "[C]omplaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams*, 697 F.2d at 1219. Therefore, the government

5

brings forth a facial jurisdictional challenge, and the Court will accept the factual allegations in the Complaint as true. *See Kerns*, 585 F.3d at 193.

"Sovereign immunity shields the United States from suit absent a consent to be sued that is unequivocally expressed." *United States v. Bormes*, 568 U.S. 6, 9 (2012) (quotation marks omitted). The Federal Tort Claims Act ("FTCA") and the Suits in Admiralty Act ("SIAA") serve as limited waivers of the federal government's sovereign immunity from suit for some tort claims. *See McMellon v. United States*, 387 F.3d 329, 335 (4th Cir. 2004).

The plaintiff brings wrongful death tort claims against the government under both the FTCA and SIAA. ECF No. 1 ¶¶ 45–63. However, "the [g]overnment is not liable under the [FTCA] for injuries to service[members] where the injuries arise out of or are in the course of activity incident to service." *Feres v. United States*, 340 U.S. 135, 146 (1950). Tort claims brought by servicemembers against the government under the FTCA are barred because "[a] suit based upon service-related activity necessarily implicates the military judgments and decisions that are inextricably intertwined with the conduct of the military mission." *United States v. Johnson*, 481 U.S. 681, 691 (1987). Tort claims brought by servicemembers against the government under the SIAA are similarly barred. *Blakey v. U.S.S. Iowa*, 991 F.2d 148, 151 (4th Cir. 1993) (the Supreme Court's reasoning in *Feres* "appl[ies] equally to actions under [the SIAA]").

At the core of the plaintiff's claims against the government lies the relationship between Mr. Mitchell-Sandor—who was "military personnel"—and the government.

6

*Feres*, 340 U.S. at 146. Thus, the "incident to service" test is implicated, and the Court must ask whether the plaintiff's suit "would call into question military discipline and decisionmaking [and would] require judicial inquiry into, and hence intrusion upon, military matters." *Cioca v. Rumsfeld*, 720 F.3d 505, 515 (4th Cir. 2013) (quoting *United States v. Stanley*, 483 U.S. 669, 682 (1987)).

Accepting the facts alleged in the Complaint as true, Mr. Mitchell-Sandor "was stationed at the GW," where he provided security for the carrier and was "required to stand watch" overnight. ECF No. 1 ¶ 18. Mr. Mitchell-Sandor "was [ordered] to live on board the GW." *Id.* ¶ 20. Therefore, his living conditions—which the Complaint alleges were the cause of his death—were incident to his orders to serve as security for the GW. *Id.* ¶¶ 48–49. Thus, Counts II and III allege injuries that occurred "in the course of activity incident to service." *Feres*, 340 U.S. 135 at 146. Accordingly, both counts are barred by sovereign immunity. *Id.*

The plaintiff contends that Mr. Mitchell-Sandor was harmed by the alleged torts when he was "off duty." ECF No. 67 at 13. In support, the plaintiff claims that Mr. Mitchell-Sandor was harmed while "resting in his car in the parking lot, trying to locate a warm shower and a place to eat, [and] driving hours home to Connecticut because he had no place to sleep when his shift ended." *Id.* The only allegation the plaintiff highlights that appears in the Complaint is that "[i]n order to rest, [Mr. Mitchell-Sandor] slept in his car frequently because he was unable to do so on the GW." ECF No. 1 ¶ 28. But the alleged harm nevertheless stems from the conditions aboard the GW, where Mr. Mitchell-Sandor was ordered to live. *See* ECF No. 1 ¶ 20.

7

The plaintiff also argues that "although [Mr. Mitchell-Sandor] died on the GW itself . . . the harm he endured for months leading up to his death occurred off-ship, in places not associated with the GW." ECF No. 67 at 13. But that harm, too, stemmed from the conditions aboard the GW, where Mr. Mitchell-Sandor was ordered to live. *See* ECF No. 1 ¶ 20. That Mr. Mitchell-Sandor experienced some harmful effects of his living conditions aboard the GW in places other than the vessel ultimately does not negate the fact that the harm itself resulted from his military orders.

Lastly, the plaintiff asserts that Mr. Mitchell-Sandor was harmed while "attempting to engage in basic activities of daily living that all humans do," as opposed to activities related to military service. ECF No. 68 at 14. However, Mr. Mitchell-Sandor was ordered to engage in those basic activities of daily living aboard the GW because of his military service. *See* ECF No. 1 ¶ 20. To inquire into the commanding officer's decision to order Mr. Mitchell-Sandor and the rest of the crew to live aboard the GW would run counter to the "incident to service" test. *See Cioca*, 720 F.3d at 515 (warning that courts should not "call into question military discipline and decisionmaking"). Therefore, all of the alleged harm to Mr. Mitchell-Sandor occurred during activity incident to his military service, and the plaintiff's claims are barred under *Feres*.[3]

Accordingly, Counts II and III of the Complaint will be **DISMISSED**.

---

[3] The Court need not address the government's remaining arguments because sovereign immunity under the *Feres* doctrine, alone, is dispositive.

8

B. **HII's Motion to Dismiss for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)**

To state a negligence claim under Virginia[4] law, a plaintiff must demonstrate "a legal duty, a violation of the duty, and consequent damage." *Marshall v. Winston*, 389 S.E.2d 902, 904 (Va. 1990). "Whether a legal duty . . . exists is a pure question of law." *Quisenberry v. Huntington Ingalls Inc.*, 818 S.E.2d 805, 809 (Va. 2018). The Complaint fails to allege the first element of the negligence claim, because HII had no duty to provide living accommodations for Mr. Mitchell-Sandor apart from the duty imposed by its government contract. *See Tingler v. Graystone Homes, Inc.*, 834 S.E.2d 244, 254 (Va. 2019).

---

[4] The parties agree that Virginia law applies. ECF No. 60 at 13; *see* ECF No. 73 at 5; ECF No. 77 at 5 n.1. But the Court has also considered whether admiralty law applies to the plaintiff's tort claims. It does not. To invoke admiralty jurisdiction, "a tort claim must satisfy conditions both of location and of connection with maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). The plaintiff's claim fails the location test. "A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Id.* The Fourth Circuit has held that "[a] dry dock in service, permanently moored to the land, has most of the attributes of [] an extension of the land [such] as a wharf or a dock, but it does not retain that character when it has been severed from its attachments to the land and when, under tow, it is moving over navigable waters . . . ." *United States v. Moran Towing & Transp. Co.*, 374 F.2d 656, 662 (4th Cir. 1967), *rev'd on other grounds, United States v. Bethlehem Steel Co.*, 389 U.S. 575 (1968). Here, the Complaint alleges that the GW was "drydocked on land." ECF No. 1 ¶ 15; *cf id.* The plaintiff's claim is not subject to admiralty law because the GW was drydocked on land. The Court will apply Virginia law.

9

### i. *Contractual Duties*

Virginia's source of duty rule prevents tort liability from being "imposed upon a contracting party for failing to do a contractual task when no common-law tort duty would have required him to do it anyway." *Tingler*, 834 S.E.2d at 255. Thus, "in order to recover in tort, the duty tortiously or negligently breached must be a common[-]law duty, not one existing between the parties solely by virtue of the contract." *Id.* (quotations omitted). "If the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action . . . then the action is founded upon contract, and not upon tort." *Id.* (emphasis removed).

The Complaint alleges HII contracted with the Navy to complete the RCOH of the GW. ECF No. 1 ¶ 13. Under the terms of the contract, HII was "obligated to provide living accommodations and all related services for workers on and around the vessel."[5] *Id.* ¶ 16. HII *might* have owed Mr. Mitchell-Sandor a contractual duty as an intended third-party beneficiary of the contract between HII and the government. *See*

---

[5] The contract alleged in the Complaint is not before the Court. It was neither attached to the Complaint nor submitted as an exhibit to the parties' briefings on the motions. *See Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018) ("[A] court may consider documents . . . attached to the motion to dismiss, so long as they are integral to the complaint and authentic." (quotation marks omitted)); *Blankenship v. Manchin*, 471 F.3d 523, 528 n.1 (4th Cir. 2006) (explaining that, at the 12(b)(6) stage, courts may consider extrinsic evidence if (1) it is attached to the motion to dismiss and is integral to and relied upon in the complaint and (2) its authenticity is not disputed). Had the contract been submitted, the Court may have been able to ascertain, in more detail, the specific duties outlined therein. But in the absence of the alleged contract, the Court must accept the factual allegations regarding the terms of the contract as provided in the Complaint.

*Env't Staffing Acquisition Corp. v. B & R Const. Mgmt., Inc.*, 725 S.E.2d 550, 555 (Va. 2012) ("[O]ne not a party to a contract can sue for a breach thereof only when the condition which is alleged to have been broken was placed in the contract for his direct benefit."). However, even if the Court were to construe Mr. Mitchell-Sandor to be an intended third-party beneficiary of the contract alleged, breach of that duty would give rise to a cause of action in contract, not in tort. In other words, the only cognizable duty that HII might have owed was to the government, by the terms of the contract, or to Mr. Mitchell-Sandor, as a third-party beneficiary of the contract. Both duties that HII might have owed are derived from HII's contractual obligations, not tort law.

### ii. *Premises Liability*

The plaintiff also asserts that HII owed a duty of care to Mr. Mitchell-Sandor under a theory of premises liability, outside of HII's contractual obligations. ECF No. 73 at 7. In order to state a negligence claim under a theory of premises liability, a plaintiff must show that the defendant owned or possessed the property where the alleged harm occurred. *See* Restatement (Third) of Torts: Phys. & Emot. Harm § 51 (2012). The Complaint fails to allege facts to show that HII owned the GW. Therefore, the Court will determine whether the Complaint alleges sufficient facts to show that HII possessed the GW.

The Restatement (Third) of Torts defines a "possessor of land" as "a person who

occupies the land and controls it."[6] *Id.* § 49. The comments regarding § 49 of the Restatement provide:

> A person is in control of the land if that person has the authority and ability to take precautions to reduce the risk of harm to entrants on the land, which is the reason for imposing the duties contained in this Chapter on land possessors. Ordinarily, an owner of property who occupies it is in control of the property. However, the owner may permit others to take control of the property. . . . An owner may provide control to a contractor for the purpose of making improvements on the land.

*Id.* § 49 cmt. c.

The Complaint alleges sufficient facts to make it plausible that HII possessed the GW. They contracted to conduct the RCOH of the GW, which involved "major reconstruction." ECF No. 1 ¶¶ 13, 16. In fact, the reconstruction was so "major" that "[b]y the terms of the contract, HII was obligated to provide living accommodations and all related services for workers on and around the vessel as there were no adequate living quarters or food services available within the aircraft carrier." *Id.* ¶ 16. Accepting the facts regarding the alleged contract as true, the Court may reasonably infer that the government—the owner of the GW—provided control of the GW to HII for the purpose of making improvements on the aircraft carrier.

---

[6] The Supreme Court of Virginia has relied upon the Restatement of Torts in the formation of its premises liability common law. *See Bradshaw v. Minter*, 143 S.E.2d 827, 829 (Va. 1965) (quoting the Restatement to define "[a]ctivities dangerous to licensees"); *Busch v. Gaglio*, 150 S.E.2d 110, 113 (Va. 1966) (relying upon the Restatement to determine the scope of a land possessor's liability for injury to a licensee on their premises). In the absence of Virginia case law that defines what it means to possess land in the premises liability context, the Court adopts the approach of the Supreme Court of Virginia and relies upon the Restatement (Third) of Torts.

*See* Restatement (Third) of Torts: Phys. & Emot. Harm § 49 (2012). Because the facts in the Complaint make it plausible that HII possessed the GW, it is similarly plausible that HII may have owed Mr. Mitchell-Sandor a common-law duty. To determine whether HII owed such a duty under a premises liability theory, the Court must assess whether the Complaint alleges a relationship between HII and Mr. Mitchell-Sandor in which Mr. Mitchell-Sandor was an invitee or a licensee of HII.

      a.     *Invitee Liability*

The plaintiff argues that HII owed a common-law duty to Mr. Mitchell-Sandor as an "invitee" on HII's property. ECF No. 73 at 6–7. "[A]n invitee is one who enters pursuant to the express or implied invitation of the owner or occupier other than for a social purpose or for his own convenience." *Pearson v. Canada Contracting Co.*, 349 S.E.2d 106, 110 (Va. 1986). Here, Mr. Mitchell-Sandor lived aboard the GW for work, not for his own convenience or for a social purpose, making him an invitee. ECF No. 1 ¶ 18; *see id.* But it is undisputed that he did so at the direction (or invitation) of the owner of the aircraft carrier, the Navy—not HII. ECF No. 1 ¶¶ 18, 20. Therefore, the duty falls upon the government, which is immune from suit—not HII. *See infra* Part III.A.

      b.     *Licensee Liability*

HII suggests that Mr. Mitchell-Sandor "would more accurately be characterized as a licensee," rather than an invitee. ECF No. 77 at 11. "A licensee is one who enters for his own convenience or benefit with the knowledge and consent, express or implied, of the owner or occupier." *Pearson*, 349 S.E.2d at 110. But as

13

explained in Part III.B.ii.a, *infra*, Mr. Mitchell-Sandor was aboard the GW for work at the direction of the Navy, not for his own convenience or benefit, ECF No. 1 ¶ 18, so he does not meet the literal definition of a licensee. Accordingly, the Complaint does not sufficiently state a premises liability claim against HII.[7]

### iii. Assumption of Duty

The plaintiff, lastly, argues that HII "assumed responsibility for providing a safe premises and not creating a dangerous condition on said premises" and, therefore, was "obligated to act with reasonable care in fulfilling this role." ECF No. 73 at 9. However, any duty that HII assumed to provide a safe premises for Mr. Mitchell-Sandor would have arisen either (1) out of HII's contractual obligations to the government or (2) out of HII's status as a possessor of the aircraft carrier. For the reasons stated in Parts III.B.i and III.B.ii, *infra*, neither of those sources give rise to a duty in this case.[8]

---

[7] Because the Court concludes that Mr. Mitchell-Sandor does not meet the literal definition of a licensee, the Court declines to address whether the factual allegations in the Complaint amount to "active conduct." *See Bradshaw v. Minter*, 143 S.E.2d 827, 829 (Va. 1965) (emphasis omitted) (explaining that a possessor of land may be liable to a licensee for their own active conduct).

[8] The Court has also considered whether there are sufficient facts in the Complaint to allege that HII owed a duty of care to Mr. Mitchell-Sandor pursuant to a landlord-tenant relationship between the parties. But the Court declines to construe their relationship in this manner. The landlord-tenant relationship is a contractual one, and the Complaint fails to allege facts to show that a lease agreement existed between HII and Mr. Mitchell-Sandor. "The validity of an agreement to make a lease is governed by the contract provisions of the controlling Statute of Frauds." Restatement (Second) of Property, Land. & Ten. § 2.5 (1977). A valid lease agreement "(1) identifies the parties; (2) identifies the premises; (3) specifies the duration of the lease; (4) states the rent to be paid; and (5) is signed by the party to be charged." *Id.* § 2.2. Here, the facts alleged in the Complaint fail to demonstrate that the contract

Because the Complaint does not plausibly allege that HII owed Mr. Mitchell-Sandor a common-law duty, it fails to state a claim for negligence.[9] Accordingly, Count IV will be **DISMISSED**.

## IV.   CONCLUSION

Nothing in the Court's Opinion and Order should be construed as blessing the actions or inactions of the defendants in this case. The allegations in the Complaint are harrowing, and the Court certainly feels sympathy for the family of a 19-year-old young man whose life was lost in service to his country. But ultimately, it is this Court's duty to determine whether the allegations in the Complaint are sufficient to overcome the challenges the defendants have lodged. In reviewing the claims as pleaded here, the Court is left with no choice but to conclude that they are not.

Accordingly, the Motions to Dismiss (ECF Nos. 57, 59) are **GRANTED**.

---

between HII and the government—the only contract alleged in the Complaint—constitutes a valid lease agreement because the Complaint does not aver each of the required elements. *See id.* Further, even if the Court were to construe the contract between HII and the government as a valid lease agreement for Mr. Mitchell-Sandor's living accommodations, the proper claim against HII would be a contractual one, such as breach of implied warranty pursuant to the lease agreement, not negligence.

[9] Because the Complaint fails to allege sufficient facts to establish the duty element of the plaintiff's negligence claim, the Court declines to address HII's remaining arguments.

The Complaint as to Defendant United States of America is **DISMISSED WITH PREJUDICE** and as to Defendants Huntington Ingalls Industries, Inc. and Huntington Ingalls Incorporated is **DISMISSED WITHOUT PREJUDICE**. The plaintiff may request leave to amend the claim dismissed without prejudice on or before September 5, 2025.

**IT IS SO ORDERED**.

/s/
Jamar K. Walker
United States District Judge

Newport News, Virginia
August 15, 2025